**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| JANICE GOLDMAN, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) JURY TRIAL DEMANDED |
| vs. | ) ) |
| TAPESTRY, INC., and KATE SPADE LLC, | ) ) ) ) |
| Defendants. | ) |

**PETITION**

Plaintiff Janice Goldman ("Plaintiff"), by her attorneys, individually and on behalf of herself and others similarly situated, alleges upon personal knowledge as to herself and her acts stated herein and, as to all other matters, upon the investigation of her counsel, as follows:

**SUMMARY AND PRELIMINARY STATEMENT**

1.      This is a class action brought by Plaintiff, individually and on behalf of all others similarly situated (collectively referred to as "Class Members" or the "Class"), against Tapestry, Inc. and Kate Spade LLC (collectively "Tapestry" or "Defendants").

2.      Plaintiff generally alleges that Defendants violate Missouri law by engaging in a false and misleading price-comparison advertising scheme in their Kate Spade Outlet stores (also known as "Kate Spade New York" Outlet stores and hereinafter referred to as either "Kate Spade Outlet store" or "Outlet store"). The false and misleading price comparisons appear in a variety of places, including on price tags affixed to items, on signs posted throughout Defendants' Outlet stores, and on receipts provided at the time of purchase. Through these mediums, Defendants represent that consumers can buy products bearing the Kate Spade brand name at a substantial

discount from their normal price. In reality, the advertised sales, discounts, and percentages off are illusory and fictitious because, in violation of Missouri law, the advertised higher comparison prices are not actual or bona fide recent former prices of the same or materially similar Kate Spade branded products. Rather, the higher advertised comparison prices are either wholly fictitious, with no basis in fact, or they relate to materially different (and higher quality) Kate Spade products sold in locations other than Outlet Stores, such as Kate Spade high-end retail stores, specialty shops and large department stores. In other words, the Kate Spade products sold in Defendants' Outlet stores are manufactured specifically for, and sold exclusively at, the Outlet stores. And, they are materially different from, and inferior to (in terms of manufacturing cost, quality, grade, materials, and workmanship), Kate Spade branded products sold in high-end retail stores. In sum, Defendants have not sold substantial quantities of the lower-quality products offered in their Outlet stores at the higher advertised comparison prices in the recent past, nor have they offered to sell such products at those higher comparison prices for a reasonable and substantial period of time preceding the advertised discounts. As a result, Plaintiff and the Class have not received the benefit of the bargain (in terms of the higher valued products) that Defendants promised them because the products that they purchased from Defendants' Outlet stores do not have the higher value and worth that Defendants represent they have through their false and misleading higher price comparisons.

3.      The Federal Trade Commission ("FTC") describes false former pricing schemes, similar in all material respects to the scheme employed by Defendants, as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being

> advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

16 C.F.R. § 233.1(a).

4.      Missouri law explicitly forbids the false and misleading price comparisons that Defendants engage in. It prohibits a seller from advertising price comparisons unless the comparative price is actual, bona fide and not illusory or fictitious; and is

- A price at which reasonably substantial sales of the product were made to the public by the seller in the regular course of business, and on a regular basis during a reasonably substantial period of time in the immediate, recent period preceding the advertisement; or

- A price at which the product was openly and actively offered for sale to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of the time in the immediate, recent period preceding the advertisement.

15 CSR 60-7.060(2).

5.      Missouri law also prohibits a seller from implying any price discount unless "the reduction is, in fact, from a bona fide regular price in effect immediately prior to the advertisement." 15 CSR 60-7.050(1)(A). It also prohibits a seller from advertising a price comparison when the product being advertised materially differs in composition, grade or quality, style or design, model, name or brand, kind or variety from a comparative product. 15 CSR 60-7.060(1). And, it requires that a seller disclose the basis of a comparative price *unless* the price comparison is to the seller's own former price in compliance with 15 CSR 60-7.060(2). 15 CSR 60-7.060(8).

3

6.      These laws exist because it is well known that false price comparisons are an effective way to sell products that consumers would not otherwise buy, to sell more products than consumers would normally purchase, or to sell products at higher prices than would otherwise occur absent the false price comparison. Indeed, numerous studies show that consumers are much more likely to purchase an item if they are told that it is being offered at a price that is less than the price at which the seller recently sold the product. In other words, consumers are more likely to purchase an item if they think an item is worth more than what they are being asked to pay for it. *See, e.g.,* Dhruv Grewal & Larry D. Compeau, Comparative Price Advertising: Informative or Deceptive?, 11 J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992) ("[b]y creating an impression of savings, the presence of a higher reference price enhances [consumers'] perceived value and willingness to buy [a] product."); *see also* Compeau & Grewal, in Comparative Price Advertising: Believe It Or Not, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002) (noting that "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal," and concluding that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."); Joan Lindsey-Mullikin & Ross D. Petty, Marketing Tactics Discouraging Price Search: Deception and Competition, 64 J. of Bus. Research 67 (January 2011) (concluding that "[r]eference price ads strongly influence consumer perceptions of value"); Praveen K. Kopalle & Joan Lindsey-Mullikin, The Impact of External Reference Price On Consumer Price Expectations, 79 J. of Retailing 225 (2003) (concluding that "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."); Dr. Jerry B. Gotlieb & Dr. Cyndy Thomas Fitzgerald, An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product, 6 J. of

App'd Bus. Res. 1 (1990) (concluding that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price.")

7.     As alleged herein, Defendants have routinely and systematically violated Missouri's prohibition against false price comparisons, and Plaintiff and members of the proposed Class (as defined below) were exposed to and suffered damages as a result of Defendants' false price comparisons when they purchased merchandise from Defendants' Kate Spade Outlet stores. Specifically, Plaintiff and the Class did not receive items worth the higher advertised comparison prices and, therefore, did not receive the benefit of the bargain that Defendants advertised they would receive through its use of misleading and fictitious comparison prices. Instead, Plaintiff and members of the Class received items of lesser value than what Defendants advertised and promised them, while Defendants were unjustly enriched by selling products in higher quantities and/or at higher prices, than they otherwise would be able to sell absent the false price-comparison advertising scheme.

## PARTIES

8.     Plaintiff Janice Goldman is and was at all relevant times herein a natural person and resident of Chesterfield, Missouri. During the proposed Class Period (defined below), Plaintiff bought multiple products for personal, family or household purposes from Defendants' Kate Spade Outlet store located in Missouri.

9.     Defendant Tapestry, Inc., ("Tapestry") previously known as Coach, Inc., is incorporated in Maryland and maintains its principal place of business at 10 Hudson Yards, New York, New York, 10001. In 2018, Tapestry acquired Kate Spade & Company. Plaintiff is informed and believes and thereon alleges that Defendant Tapestry is licensed to and does business in the State of Missouri.

5

10.     Defendant Kate Spade LLC is a wholly owned subsidiary of Defendant Tapestry. Kate Spade LLC acts as the operating subsidiary for Tapestry's Kate Spade retail stores, including the Kate Spade Outlet stores. Plaintiff is informed and believes and thereon alleges that Defendant Kate Spade LLC is licensed to and does business in the State of Missouri.

11.     Defendants aided and abetted, encouraged and rendered substantial assistance to each other in committing the unlawful and deceptive acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of the wrongdoing and realized that the conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

12.     At all relevant times herein, each Defendant was the agent, representative, partner, parent company, subsidiary or affiliate of the other Defendants and was acting within the authority of such agency, representation, partnership, or affiliation while doing or omitting to do the acts alleged herein and with the permission, approval, consent, and/or ratification of all other Defendants.

13.     There exists, and at all times herein mentioned existed, a unity of interest and ownership between all of the Defendants, such that all individuality and separation ceased and Defendants became the alter egos of the other Defendants and their principals. Whenever in this complaint a reference is made to any act or omission of a particular Defendant, such allegation shall be deemed to mean that said Defendant, and its officers, directors, agents, representatives, and employees did authorize such act while actively engaged in the management, direction or control of that Defendant, and while acting within the course and scope of their employment or agency.

## JURISDICTION AND VENUE

14.     Plaintiff and/or other putative Class Members have different citizenship from Defendants.

15.     The aggregate amount of damages incurred by Plaintiff and the Class (as defined below) exceeds $5,000,000.00.

16.     Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. Section 1332, subdivision (d).

17.     As set forth herein, each Defendants have sufficient contact and presence within the State of Missouri to confer this Court with personal jurisdiction over each Defendant. Defendants operate and otherwise control at least two Kate Spade Outlet stores in the State of Missouri, in which they sell Kate Spade branded and/or trademarked items.

18.     Venue is proper in this Court under 28 U.S.C. Section 1391 because Defendants transact business in this judicial district in the County of St. Louis, State of Missouri, and the claims of Plaintiff and other putative Class Members arose in this judicial district. Plaintiff resides in this judicial district, viewed Defendants' false and misleading advertisements in this judicial district, and purchased items at Defendants' Kate Spade Outlet store located in this judicial district.

## GENERAL ALLEGATIONS

19.     The Kate Spade brand was established in 1993 and is well known as being associated with a line of high-fashion handbags, purses, wallets, shoes, jewelry, accessories and other items. In its public filings with the Securities and Exchange Commission, Tapestry states that it is a "house of modern luxury accessories and lifestyle brands." Among the current Tapestry brands are Kate Spade and Kate Spade New York (collectively "Kate Spade"). Kate Spade products are available for purchase in a variety of places, including Kate Spade flagship stores,

which are owned and operated by Defendants, and the Kate Spade website—www.katespade.com. They are also available in various retail stores that are not owned by Defendants, such as Nordstrom.

20.     Products bearing the Kate Spade brand name are also available for purchase in Kate Spade Outlet stores, which are owned and operated by Defendants. Attached to or accompanying each of these items is a price tag that states "Our Price" next to a price reflected in U.S. dollars (e.g., USD $199.00). But these prices are not the prices consumers are asked to pay (or have ever paid) to purchase items in Defendants' U.S. based Outlet stores. That is because displayed throughout the Kate Spade Outlet stores are signs and placards advertising huge reductions from the prices listed on the price tags, usually in the form of "x percent off" (e.g., "70% off"), as well as signs advertising lower prices for specific items (e.g. "$79" for a product with a $199.00 price tag). The signs advertising specific prices lower than the prices on the associated item's price tag often also state that the advertised lower price is "excluded from **additional** promotions and discounts" (emphasis added), thereby giving the impression that one or more discounts have already been applied.

21.     Upon purchase and checkout, Defendants perpetuate the perception of a discount by issuing a receipt that: (1) juxtaposes the higher price stated on each item's price tag next to the lower purchase price; and (2) calculates and displays the purported discount in both actual dollars and percentages. These receipts are clearly designed and intended to give consumers the false impression that they received a product that is worth substantially more than their purchase price.

22.     In reality, the advertised price reductions, percentages off and discounts are wholly illusory because, in violation of Missouri law, the higher prices reflected on Defendants' price tags do not represent prices at which Defendants have recently and in good faith sold in substantial

quantities the same products; or prices at which Defendants have recently and in good faith offered to sell such products for a substantial period of time. This is because the products offered in the Kate Spade Outlet stores are manufactured for, and sold exclusively at, the Kate Spade Outlet stores, and they are *always* sold for a price that is substantially below the higher advertised comparison price. These products have a lower cost basis and are inferior to (based on materials, quality, grade and/or workmanship), and therefore materially different from, the higher quality Kate Spade products offered in Kate Spade flagship and high-end department stores.

23.     To the extent Defendants contend that the higher comparison prices listed on price tags are meant to convey the market value of comparable items sold in their high-end retail stores or elsewhere, defendants violate Missouri law by: (1) failing to disclose the basis of the price comparison; and (2) failing to disclose that the items sold in Defendants' high-end retail stores are materially different and superior products, with higher manufacturing costs and superior materials, quality, grade and/or workmanship, whereas the products sold in the Outlet stores are manufactured specifically for the Outlet stores, based on a lower manufacturing cost and using materially inferior materials, quality, grade and/or workmanship.

24.     Since the higher prices represented on Defendants' price tags do not reflect and materially overstate the actual market value and worth of the products sold in Defendants' Outlet stores, consumers like Plaintiff and the Class who buy these products suffer damages and do not receive the benefit of the bargain Defendants promise them because they do not receive items that have the higher value or worth that Defendants represent they have, as measured by actual sales of the same items. Instead, Plaintiff and the members of the Class received products that, based on actual, historical selling prices, have a market value that was, at the time of purchase, significantly below the higher advertised comparison prices.

9

25.     Through their use of fictitious and unsubstantiated price comparisons, Defendants intentionally and/or negligently misrepresented and/or failed to disclose material information concerning the actual value or worth of the products sold to Plaintiff and the Class in Defendants' Outlet stores. In publishing, displaying, and otherwise communicating and disseminating the misleading price comparisons, and in concealing the true information, Defendants intended to induce Plaintiff and members of the Class to purchase products sold in their Outlet stores in quantities and/or at prices at which they would not otherwise have agreed.

26.     Defendants knew or should have known that their price-comparison advertisements conveyed material, false information to consumers, including Plaintiff, about the value and worth of the merchandise they sell. As set forth above, there exists a wealth of academic literature and consumer studies showing that false price comparisons influence consumer behavior; that higher comparison prices influence consumer perception of value and purchasing decisions; and that if a comparison price is fictitious or inflated, it is likely to deceive consumers by creating illusions of savings that the consumer thinks they need to take advantage of by purchasing the product now rather than risk losing the purported savings or continuing to look for a better deal elsewhere.

**PLAINTIFF WAS A VICTIM OF DEFENDANTS' PRACTICES**

27.     After being exposed to Defendants' price-comparison advertising scheme, Plaintiff purchased numerous products during the Class Period for personal, family or household purposes at Defendants' Outlet stores located in Missouri. In each of these transactions, Plaintiff did not receive the actual value that Defendants represented she would receive through their false and misleading price-comparison advertising scheme.

28.     For example, on or about October 24, 2016, Plaintiff shopped at Defendants' Kate Spade Outlet store in Chesterfield, Missouri, where she purchased two Winni handbags that

Defendants represented had a normal price of $199.00 each, but which could be purchased for "60% + 20% OFF," or $63.68 each. A true and correct copy of the receipt Plaintiff received from Defendants in connection with this transaction is attached hereto as Exhibit 1.

29.     The higher advertised prices of each item purchased, as reflected both on their attached price tags and on the accompanying receipt, were false and misleading, and in violation of Missouri law, because they did not represent the actual, bona fide prices at which Defendants had recently offered to sell (or recently sold) those same (or materially similar) products for a reasonable period of time in the time period recently preceding her transaction. For the same reason, the advertised discounts and percentages off were also false and misleading. In reality, the prevailing retail price and, therefore, the actual fair market value of each item at the time of her purchase was materially lower than the advertised higher regular price. As a result, Plaintiff suffered monetary damages because she did not receive products worth the higher value Defendants represented she would receive through their false comparative pricing scheme, and she therefore did not receive the benefit of the bargain that Defendants promised.

30.     Similarly, on or about October 25, 2016, Plaintiff shopped at Defendants' Kate Spade Outlet store in Chesterfield, Missouri, where she purchased four items, including: (1) two Hani purses that Defendants represented had a normal price of $119.00 each, but which could be purchased for "60% + 20% OFF," or $38.08 each; (2) a Glitter Spade accessory that Defendants represented had a normal price of $39.00, but which could be purchased for "60% + 20% OFF" or $12.48; and (3) a Neda wallet that Defendants represented had a normal price of $139.00, but which could be purchased for "60% + 20% OFF" or $44.48. A true and correct copy of the receipt Plaintiff received from Defendants in connection with this transaction is attached hereto as Exhibit 2.

11

31.     The higher advertised prices of each item purchased, as reflected both on their attached price tags and on the accompanying receipt, were false and misleading, and in violation of Missouri law, because they did not represent the actual, bona fide prices at which Defendants had recently offered to sell (or recently sold) those same (or materially similar) products for a reasonable period of time in the time period recently preceding her transaction. For the same reason, the advertised discounts and percentages off were also false and misleading. Plaintiff further alleges that the prevailing retail price and, therefore, actual fair market value of each item at the time of her purchase was materially lower than the advertised higher regular price. As a result, Plaintiff suffered monetary damages because she did not receive products worth the higher value Defendants represented she would receive through their false comparative pricing scheme, and she therefore did not receive the benefit of the bargain that Defendants promised.

32.     Similarly, on or about June 3, 2017, Plaintiff shopped at Defendants' Kate Spade Outlet store in Chesterfield, Missouri, where she purchased two items, including: (1) a Millie shoulder purse that Defendants represented had a normal price of $229.00, but which could be purchased for "60% + 20% OFF," or $73.28; and (2) a Keisha shoulder purse that Defendants represented had a normal price of $178.00, but which could be purchased for "60% + 20% OFF" or $56.96. A true and correct copy of the receipt Plaintiff received from Defendants in connection with this transaction is attached hereto as Exhibit 3.

33.     The higher advertised prices of each item purchased, as reflected both on their attached price tags and on the accompanying receipt, were false and misleading, and in violation of Missouri law, because they did not represent the actual, bona fide prices at which Defendants had recently offered to sell (or recently sold) those same (or materially similar) products for a reasonable period of time in the time period recently preceding her transaction. For the same

12

reason, the advertised discounts and percentages off were also false and misleading. Plaintiff further alleges that the prevailing retail price and, therefore, the actual fair market value of each item at the time of her purchase was materially lower than the advertised higher regular price. As a result, Plaintiff suffered monetary damages because she did not receive products worth the higher value Defendants represented she would receive through their false comparative pricing scheme, and she therefore did not receive the benefit of the bargain that Defendants promised.

34.     Similarly, on or about July 12, 2019, Plaintiff shopped at Defendants' Kate Spade Outlet store in Chesterfield, Missouri, where she purchased a Mini Mina purse that Defendants represented had a normal price of $329.00, but which could be purchased for "70% OFF," or $98.70. A true and correct copy of the receipt Plaintiff received from Defendants in connection with this transaction is attached hereto as Exhibit 4.

35.     The higher advertised price of this item, as reflected both on its attached price tag and on the accompanying receipt, was false and misleading, and in violation of Missouri law, because it did not represent the actual, bona fide price at which Defendants had recently offered to sell (or recently sold) this same (or materially similar) product for a reasonable period of time in the time period recently preceding her transaction. For the same reason, the advertised discount and percentage off was also false and misleading. Plaintiff further alleges that the prevailing retail price and, therefore, the actual fair market value of this item at the time of her purchase was materially lower than the advertised higher regular price. As a result, Plaintiff suffered monetary damages because she did not receive a product worth the higher value Defendants represented she would receive through their false comparative pricing scheme, and she therefore did not receive the benefit of the bargain that Defendants promised.

36.     The transactions described above are only a sampling of the numerous products that Plaintiff purchased from Defendants' Kate Spade Outlet stores during the Class Period based on similar false and misleading representations concerning those products' normal and purportedly discounted prices. Plaintiff was similarly injured as a result of Defendants' false and deceptive price comparisons with respect to each such purchase and, by detailing the above transactions, Plaintiff does not in any way intend to limit the scope of her claims or request for relief to the detailed transactions. Rather, Plaintiff expressly seeks damages for all of her similar transactions with Defendants and, if necessary, Plaintiff will amend or seek leave to amend this Complaint to detail such additional transactions upon further investigation and discovery of same.

37.     Plaintiff would like to shop at Defendants' Kate Spade Outlet stores again in the immediate future, but she currently cannot trust that Defendants will advertise truthful price comparisons in compliance with Missouri law. If Defendants agree to voluntarily change their practices, or if Defendants are ordered to do so by a court of competent jurisdiction, such that Plaintiff can reasonably trust that Defendants' price-comparison advertisements will comply with Missouri law, Plaintiff will return to shop at Defendants' Kate Spade Outlet stores.

38.     Defendants' deceptive practices are wide-spread over the course of many years. Plaintiff therefore believes that hundreds or thousands of similar and materially indistinguishable acts of misleading, untrue, false and deceptive price-comparison advertising were committed by Defendants with respect to Class Members' purchases at Defendants' Kate Spade Outlet stores throughout Missouri during the Class Period.

39.     Defendants continue to employ unfair, deceptive, false, misleading, and untrue advertising practices as alleged herein. Plaintiff, on behalf of herself and the putative Class, seeks

all actual damages, punitive damages, injunctive relief, costs, attorneys' fees, and any other relief the Court deems proper.

## CLASS DEFINITION

40.     The Class is defined as follows:

"All persons who, while in the state of Missouri, and any time between the date that is five years immediately preceding the filing of this lawsuit and the date of any judgment in this case (the "Class Period"), purchased from Defendants' Kate Spade Outlet Stores for personal, family or household purposes one or more products advertised with a reduced price, or percentage off from a higher comparison price and who have not received a refund or credit for their purchase(s)."

Excluded from the Class are Defendants, as well as their current and past officers, directors, and employees.

41.     Plaintiff reserves the right to amend this Class definition, including the addition of any subclasses and or modification of the Class Period, at any time based upon further investigation, information and/or discovery.

## CLASS ALLEGATIONS

42.     Plaintiff seeks certification of the Class pursuant to Federal Rules 23(a) and 23(b)(3) and may also, or in the alternative, seek certification of subclasses and/or particular issues pursuant to Federal Rules 23(c)(4) and (5).

43.     The members of the Class identified above are so numerous that joinder of all members is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, the individual identities of the individual members of the Class are ascertainable through Defendants' records and/or by public notice and self-identification.

44.    There is a well-defined community of interest in the questions of fact and law involved affecting the members of the Class. The questions of law and fact common to the members of the Class predominate over questions affecting only individual Class Members, and include, but are not limited to, the following:

a.    Whether Defendants made false or misleading statements in connection with their price-comparison advertising;

b.    Whether Defendants' price-comparison advertising was false, deceptive, misleading or unlawful under Missouri law;

c.    Whether Defendants' statements regarding their price comparisons were material to Plaintiff's and consumers' purchasing decisions;

d.    Whether the prices stated on Defendants' price tags were actual and bona fide, or fictitious under Missouri law;

e.    Whether Defendants had a bona fide intent of selling a reasonable quantity of products sold in the Kate Spade Outlet stores at the higher comparison prices listed on their price tags;

f.    Whether the products offered and sold in Defendants' Kate Spade Outlet stores have the same worth and value as products offered and sold under the Kate Spade brand name in Kate Spade high-end retail stores;

g.    Whether the price tags, in-store advertisements and receipts for products sold in Defendants' Kate Spade Outlet stores materially overstate the actual value of those products;

h.    Whether Plaintiff and putative Class Members have suffered damages as a result of Defendants' conduct;

   i.  Whether Plaintiff and the Class received the value and/or benefit of the bargain that Defendants advertised they would receive;

   j.  Whether the members of the Class are entitled to injunctive relief;

   k.  Whether the members of the Class are entitled to pre-judgment and post-judgment interest;

   l.  Whether the members of the Class are entitled to punitive damages; and

   m.  Whether the members of the Class are entitled to an award of reasonable attorneys' fees and costs.

45.  Plaintiff's claims are typical of the claims of the other members of the Class which all arise from the same operative set of facts involving Defendants' false price-comparison advertising scheme and are entitled to damages of the same character.

46.  Plaintiff will fairly and adequately protect the interests of the Class and has no known conflicts of interest. Plaintiff has retained counsel experienced in handling consumer class actions of the type alleged herein.

47.  Prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class Members and would lead to repetitious trials of the numerous common questions of fact and law in the State of Missouri; and could lead to the establishment of incompatible standards of conduct for Defendants. Such individual adjudications would be, as a practical matter, dispositive of the interests of, or would substantially impair or impede the interests of, the other Class Members. Plaintiff is not aware of any difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

48.     Defendants have acted or have refused to act on grounds that generally apply to the Class and final injunctive relief is appropriate as to the Class as a whole. Specifically, Defendants have advertised misleading and untrue comparative prices, discounted prices and percentages off in violation of Missouri law, and injunctive relief is necessary to avoid ongoing violations in the future.

49.     The common questions of law and fact predominate over any questions affecting only individual members. Furthermore, a class action is a superior method for fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with applicable law. The interest of Class Members in individually controlling the prosecution of separate claims against Defendants is small relative to the cost of maintaining an action.

50.     Proper and sufficient notice of this action may be provided to the Class Members through methods best designed to provide adequate notice, including potentially a combination of electronic mail and/or postal mail, internet website, and/or publication.

51.     Furthermore, the Class Members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Absent certification of this action as a class action, Plaintiff and the members of the Class will continue to be damaged, thereby allowing Defendants to retain the proceeds of their ill-gotten gain.

52.     Plaintiff alleges that, as a direct result of bringing the allegations herein to Defendants' attention, Plaintiff has or will make substantial and important changes to Defendants' advertising practices. Thus, Plaintiff has or will enforce an important public right affecting the public interest, conferring a significant benefit, whether pecuniary or nonpecuniary, on the general

public or a large class of persons. Plaintiff further alleges that private enforcement of the laws-in-question is both necessary and financially burdensome for Plaintiff.

## COUNT I

### Unlawful Practices in Violation of the Missouri Merchandising Practices Act

53.     Plaintiff incorporates and realleges each and every preceding paragraph as though fully set forth herein.

54.     The Missouri Merchandising Practices Act ("MMPA") provides, in part, that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice." V.A.M.S. § 407.020(1).

55.     Defendants violate the MMPA because their price-comparison advertising scheme violates federal regulations promulgated by the FTC, including 16 C.F.R. § 233.1(a), which describes acts and practices materially indistinguishable from those of Defendants as deceptive.

56.     Defendants also violate the MMPA because their price-comparison advertising scheme violates numerous rules promulgated by the Missouri Attorney General, which such acts and practices are deemed to violate the MMPA, including the following:

    a.     A seller may not "use terminology implying a reduction from a price in effect immediately prior to the advertisement (examples: sale, sale prices, now only $__) unless . . . [t]he reduction is, in fact, from a bona fide regular price in effect immediately prior to the advertisement." 15 CSR 60-7.050.

    b.     A seller may not make any price comparison in which the product being advertised materially differs in composition, grade or quality, style or design, model, name

19

or brand, kind or variety, or service and performance characteristics from the comparative product, unless the seller clearly discloses the material difference in the advertisement with the price comparison. 15 CSR 60-7.060(1).

      c.     A seller shall not make a price comparison to a former price unless the comparative former price is actual, bona fide and not illusory or fictitious, and is—

- A price at which reasonably substantial sales of the product were made to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of time in the immediate, recent period preceding the advertisement. There shall be a rebuttable presumption that the seller has not complied with these terms unless the seller can show that the percentage of unit sales of the product at the comparative price, or at prices higher than the comparative price, is ten percent (10%) or more of the total unit sales of the product during a period of time, not less than thirty (30) days nor more than twelve (12) months, which includes the advertisement;

- A price at which the product was openly and actively offered for sale to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of time in the immediate, recent period preceding the advertisement. There shall be a rebuttable presumption that the seller has not complied with these terms unless the seller can show that the product was offered for sale at the comparative price, or at prices higher than the comparative price, forty percent (40%) or more of the time during a period of time, not less than

thirty (30) days nor more than twelve (12) months, which includes the advertisement;

- A price at which reasonably substantial sales of the product were made to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of time in any period preceding the advertisement, and the advertisement clearly discloses, with the price comparison, the date, time or seasonal period of that offer. There shall be a rebuttable presumption that the seller has not complied with these terms unless the seller can show that the percentage of unit sales of the product at the comparative price, or at prices higher than the comparative price, is ten percent (10%) or more of the total unit sales of the product during the disclosed date, time or seasonal period; or

- A price at which the product was openly and actively offered for sale to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of time in any period preceding the advertisement, and the advertisement clearly discloses with the price comparison, the date, time or seasonal period of that offer. There shall be a rebuttable presumption that the seller has not complied with these terms unless the seller can show that the product was offered for sale at the comparative price, or at prices higher than the comparative price, forty percent (40%) or more of the time during a period of time, not less than thirty (30) days nor more than twelve (12)

months, which includes or is included within the disclosed date, time or

seasonal period.

15 CSR 60-7.060(2)(B).

57.    As alleged herein, Defendants violate 15 CSR 60-7.050 because their advertised price reductions are not from a bona fide regular price that was in effect for the same product immediately prior to the advertisement.

58.    Since Defendants do not disclose any alternative basis for their advertised price reductions, the advertised reductions (by default) must be from Defendants' own former prices in compliance with 15 CSR 60-7.060(2). But since they are not, Defendants violate 15 CSR 60-7.060(8).

59.    To the extent Defendants contend that their higher reference prices relate to products offered and sold in their high-end retail stores, Defendants violate 15 CSR 60-7.060(1) and 15 CSR 60-7.060(8) because they do not disclose the basis of their price comparisons and because Defendants fail to disclose that the products sold in their Outlet Stores are of a materially inferior composition, grade or quality, style or design, model, name or brand, kind or variety, from the products sold in Defendants' high-end retail stores.

60.    Plaintiff is also entitled to a rebuttable presumption that Defendants violate 15 CSR 60-7.060(2)(B) because they cannot show that they sold at least ten percent (10%) of total unit sales of any product at the higher advertised reference prices, or that they offered such products for sale at the higher advertised reference prices forty percent (40%) or more of the time during a period of time, not less than thirty (30) days nor more than twelve (12) months preceding any advertisement.

61.     Finally, Defendants violate 15 CSR 60-7.070 because they do not maintain adequate records that disclose the factual basis for their price comparisons and upon which the validity of their price comparison claims can be established.

62.     Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by Section 407.020, may bring a private civil action to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorneys' fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper. V.A.M.S. 407.025.

63.     As alleged herein, Plaintiff and the Class purchased from Defendants various products for personal, family or household purposes. Defendants falsely advertised that these products could be bought at prices substantially below their normal prices. In reality the discounts were illusory because the higher comparison prices were not bona fide prices in effect immediately prior to the advertised sales and were not prices at which Defendants had recently sold the same or materially similar products in substantial quantities, or prices at which Defendants had recently offered to sell the same or materially similar products for a substantial period of time. Nor were the higher comparison prices reflective of comparable products sold in Defendants' high-end retail stores. Additionally, Defendants have not maintained records showing the validity of their price comparisons as required by the MMPA.

64.     By advertising higher comparison prices associated with their superior quality products sold in flagship and high-end retail stores, Defendants represented that Plaintiff and the Class would receive products that had the same composition, grade or quality, style or design,

model, and value as those products. In reality, Plaintiff and the Class received different items, with different composition, grade or quality, style or design, model, and of lesser value than what Defendants offer and sell in other locations at the higher advertised comparison prices.

65.     The acts and practices of Defendants, as alleged herein, were intended to deceive consumers.

66.     The acts and practices of Defendants, as alleged herein, caused actual damages to Plaintiff and the Class, who did not receive the benefit of their bargain because the actual market value of the products they received was materially less than the higher value of those products (as reflected in the higher comparison prices) advertised by Defendants. On behalf of herself and the Class, Plaintiff seeks from Defendants benefit of the bargain damages, in addition to punitive damages, interest, attorneys' fees and any and all other relief to which they are entitled.

67.     In addition, Plaintiff and the putative Class seek and are entitled to a permanent injunction restraining Defendants from continuing to violate Missouri law through their price-comparison advertising scheme.

## COUNT II

### Unjust Enrichment

68.     Plaintiff incorporates and realleges each and every preceding paragraph as though fully set forth herein.

69.     As a result of Defendants' false price comparison advertising scheme, Defendants were unjustly enriched at the expense of Plaintiff and the Class who did not receive the benefits of the bargain promised by Defendants and who purchased from Defendants more products and/or paid higher prices than they would have absent the scheme.

70. Defendants intentionally accepted, retained and appreciated the money that Plaintiff and the Class spent purchasing products that were tainted and influenced by the false price comparison advertising scheme.

71. Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff and the Class in light of the fact that the products that Plaintiff and the Class purchased from Defendants did not have the higher value or worth that Defendants represented they had through their false price comparisons.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and members of the putative Class pray for judgment against all Defendants as follows:

1. For an order that this action be certified as a class action on behalf of the proposed Class and Plaintiff be appointed as representative of the Class; and

2. For an order and judgment preliminarily and permanently enjoining Defendants from employing, utilizing or otherwise publishing false, untrue, and misleading comparison prices;

3. For an order compelling Defendants to institute policies and procedures which will educate Defendants' employees as to Missouri price-comparison advertising laws and assure that such employees follow the law;

4. For such orders or judgments as the Court may consider necessary to prevent the use or employment of Defendants of any practices which violate Missouri law;

5. For actual damages, measured by the benefit of the bargain that Defendants represented, but which Plaintiff and the Class did not receive;

6.    For equitable relief, including disgorgement of ill-gotten gains and unjust enrichment obtained by Defendants;

7.    For attorneys' fees and costs;

8.    For pre-judgment interest;

9.    For post-judgment interest; and

10.   For such other and further relief as the court may deem proper.

BLITZ, BARDGETT & DEUTSCH, L.C.

By: /s/   *Christopher O. Bauman*
Robert D. Blitz #24387
Christopher O. Bauman #52480
120 South Central Ave., Suite 1500
St. Louis, Missouri 63105
314-863-1500 (office)
314-863-1877 (facsimile)
rblitz@bbdlc.com
cbauman@bbdlc.com


Matthew Zevin (Cal. # 170736, Pro Hac Vice application to be filed)
Stanley Law Group
10021 Willow Creek Road, Suite 200
San Diego, California 92131
619- 235-5306 (office)
815-377-8419 (facsimile)
mzevin@aol.com

Scott A. Kitner (Texas # 24065563, Pro Hac Vice application to be filed))
Stanley Law Group
6116 N. Central Expressway, Suite 1500
Dallas, Texas 75206
214-443-4300 (office)

*Attorneys for Plaintiff and Class*

Daniel B. Sivils #40685
121 Summerbrooke Lane
Branson, Missouri 65616-7007
417-827-7202 (office)


*Attorney for Plaintiff Janice Goldman*