**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| JANICE GOLDMAN, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 4:20-cv-00748-RWS |
| vs. | ) ) | JURY TRIAL DEMANDED |
| TAPESTRY, INC. and KATE SPADE, LLC, | ) ) ) | |
| Defendants. | ) | |

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     RELEVANT STANDARDS ...................................................................................... 3

III.    PLAINTIFF HAS STANDING ................................................................................ 3

IV.     PLAINTIFF PLED A VALID CLAIM UNDER THE MMPA ............................... 5

        A.      Plaintiff alleges an ascertainable loss. ......................................................... 5

        B.      Kate Spade has no "Safe Harbor." ............................................................. 10

        C.      Plaintiff's claims are pled with particularity ............................................ 12

V.      PLAINTIFF ADEQUATELY PLEADS UNJUST ENRICHMENT ............................ 15

VI.     CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Abels v. Farmers Commodities Corp.*,
  259, F.3d 910 (8th Cir. 2001) ............................................ 3, 14

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009) ...................................................... 3, 15

*Belcastro v. Burberry Ltd.*,
  2017 WL 744596 (S.D.N.Y. Feb. 23, 2017) .................................... 9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................... 3

*BJC Health Sys. v. Columbia Cas. Co.*,
  478 F.3d 908 (8th Cir. 2007) ............................................... 12

*Branca v. Nordstrom, Inc.*,
  No. 14-cv-2062, 2015 WL 10436858 (S.D. Cal. Oct. 9, 2015) .................. 14

*Bratton v. Hershey Company*, No. 2:16-cv-4322-C-NKL, 2017 WL 2126864 (W.D. Mo. May 16,
  2017) ......................................................................... 7

*Calderon v. Kate Spade & Co.*,
  No. 3:19-cv-00674-AJB-JLB, 2020 WL 1062930 (S.D. Cal. Mar. 5, 2020) .......... 1, 11, 12, 14

*Clement v. St. Charles Nissan, Inc.*,
  103 S.W.3d 898 (Mo.App.E.D.2003) ........................................... 8

*Covell v. Nine W. Holdings, Inc.*,
  No. 3:17-CV-01371-H-JLB, 2018 WL 558976 (S.D. Cal. Jan. 25, 2018) ............ 14

*Craft v. Philip Morris Companies, Inc.*,
  No. 002-00406A, 2003 WL 23139381 (Cir. Mo. 2003) ........................... 6

*Drobnak v. Anderson Corp.*,
  561 F.3d 778 (8th Cir. 2009) ................................................. 3

*Erickson v. Pardus*,
  551 U.S. 89 (2007) .......................................................... 3, 5

*Finke v. Boyer*,
  56 S.W.2d 372 (Mo. 1932) ..................................................... 7

*Gibb v. Scott*,
  958 F.2d 814 (8th Cir.1992) ................................................. 10

*Gunderson v. ADM Investor Servs., Inc.*,
  230 F.3d 1363 (8th Cir. 2000) .............................................. 14

*Hawkins v. Nestle U.S.A., Inc.*,
  309 F. Supp. 3d 696 (E.D. Mo. 2018) ....................................... 6, 15

*Hennessey v. Kohl's Corp.*,
  No. 4:19 CV 1866 DDN, 2020 WL 870982 (E.D. Mo. Feb. 21, 2020) ................ 9

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) .............................................. 1, 8

*In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*,
  16-02709-MD-W-GAF, 2019 WL 1418292 (W.D. Mo. Mar. 21, 2019) ................. 4

*In re NationsMart Corp. Sec. Litig.*,
  130 F.3d 309 (8th Cir. 1997) ............................................... 12

*In re SuperValu, Inc. Consumer Data Sec. Breach Litig.*,
    870 F.3d 763 (8th Cir. 2017) .......................................................................... 4
*Johnson v. Jos. A. Bank Clothiers, Inc.*,
    2014 WL 4129576 (S.D. Ohio Aug. 19, 2014) ............................................. 10
*Kelly v. Cape Cod Potato Chip Co.*,
    81 F. Supp. 3d 754 (W.D. Mo. 2015) ............................................................ 4
*Kelly with Gabriele v. ConAgra Foods, Inc.*,
    5:14-CV-05183, 2015 WL 3904386 (W.D. Ark. 2015) ................................. 4
*Kendrick v. Ryus*,
    225 Mo. 150, 123 S.W. 937 (1909) .............................................................. 7
*Kim v. Carter's Inc.*,
    598 F.3d 362 (7th Cir. 2010) ...................................................................... 10
*Klapmeir v. Telecheck Intern., Inc.*,
    482 F.2d 247 (8th Cir. 1973) ........................................................................ 8
*McCullen v. Union Pac. R.R. Co.*,
    19-00347-CV-W-ODS, 2019 WL 3456815 (W.D. Mo. July 31, 2019) ........... 5
*Mulder v. Kohl's Dep't Stores, Inc.*,
    2016 WL 393215 (D. Mass. Feb. 1, 2016) .................................................... 9
*Murillo v. Kohl's Corporation*,
    197 F. Supp. 3d 1119 (E.D. Wis. 2016) ...................................................... 13
*Murphy v. Stonewall Kitchen, LLC*,
    503 S.W.3d 308 (Mo. App. 2016) ................................................................ 8
*Nestle Purina Petcare Co. v. Blue Buffalo Co., Ltd.*,
    No. 4:14 CV 859 RWS, 2015 WL 1782661 (E.D. Mo. Apr. 20, 2015) ......... 12
*Patterson v. ABS Consulting, Inc.*,
    No. 4:08CV697RWS, 2009 WL 248683 (E.D. Mo. Feb. 2, 2009).................. 10
*Pickles v. Kate Spade and Co.*,
    No. 15-cv-05329-VC, 2016 WL 3999531 (N.D. Cal. Jul. 26, 2016) .............. 1
*Rubenstein v. Neiman Marcus Group LLC*,
    No. 15-55890, 687 F. App'x 564 (9th Cir. 2017) ........................................ 14
*Shaulis v. Nordstrom Inc.*,
    120 F. Supp. 3d 40, 2015 WL 4886080 (D. Mass. 2015), *aff'd*, 865 F.3d 1 (1st Cir. 2017)...... 9
*Spann v. J.C. Penney Corp.*,
    No. SA CV 12-0215 FMO (RNBx), 2015 WL 1526559 (C.D. Cal. Mar. 23, 2015) ................ 1
*Spann v. JCPenney*,
    307 F.R.D. 508 (C.D. Cal. 2015) .................................................................. 1
*Sunset Pools v. Schaefer*,
    869 S.W.3d 883 (Mo. App. Ed. 1994) ....................................................... 5, 6
*Taylor v Enterprise Rent-A-Car Co.*,
    No. CV 10-1849-JST(SHx), 2011 WL 13214090 (C.D. Cal. June 24, 2011) ........................... 7
*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*,
    441 F.3d 552 (8th Cir. 2006) ...................................................................... 13
*Vitello v. Natrol, LLC*,
    No. 4:18 CV 915 RWS, 2018 WL 6304900 (E.D. Mo. Dec. 3, 2018) .............. 12, 13

**Statutes**
15 CSR 60-7.010(1)(D) .............................................................................. 11

15 CSR 60-7.050 ................................................................................................................... 1, 8
15 CSR 60-7.060 ....................................................................................................................... 8
15 CSR 60-7.060(1) ................................................................................................................... 1
15 CSR 60-7.060(2)(B) ......................................................................................................... 1, 10
15 CSR 60-7.060(2)(B)(3)-(4) ................................................................................................. 11
Missouri Merchandising Practices Act ...................................................................... 1, 7, 12, 15

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 3
Fed. R. Civ. P. 9(b) .................................................................................................... 2, 12, 13, 14

**Treatises**

*Newberg on Class Actions* § 2:1 (5th ed. 2012) ...................................................................... 4

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## I.    INTRODUCTION

Plaintiff Janice Goldman ("Plaintiff") alleges a systematic scheme in which Defendants Tapestry, Inc. and Kate Spade LLC (collectively, "Defendants" or "Kate Spade") falsely advertise consumers can buy products from their Outlet Stores at significant discounts from the higher prices displayed on price tags affixed to their merchandise. The discounts are false and misleading because the products in Kate Spade Outlet Stores are manufactured exclusively for those stores, are materially inferior to products sold in high-end retail stores, and have not been offered or sold in substantial quantities at the higher prices. Accordingly, the Outlet Store products do not have the higher value Kate Spade pretends they have, and consumers do not receive the bargain Defendants advertise. Kate Spade's conduct unambiguously violates the Missouri Merchandising Practices Act ("MMPA"), which prohibits a seller from implying a price reduction unless it is from a bona fide regular price in effect immediately prior to the advertisement (15 CSR 60-7.050 and 15 CSR 60-7.060(2)(B)), and related to a product that does not materially differ in composition, grade or quality from the product offered. 15 CSR 60-7.060(1).

Defendants' assertion that "most" cases of this type fail early lacks support. In fact, a great many of these cases have proven true and successful, *e.g.*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) (reversing order granting motion to dismiss); *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO (RNBx), 2015 WL 1526559 (C.D. Cal. Mar. 23, 2015) (denying defendant's motion for summary judgment); *Spann v. JCPenney*, 307 F.R.D. 508 (C.D. Cal. 2015) (granting class certification). In fact, Kate Spade itself has failed to obtain early dismissal of at least two similar cases brought under California law. *Calderon v. Kate Spade & Co.*, No. 3:19-cv-00674-AJB-JLB, 2020 WL 1062930 (S.D. Cal. Mar. 5, 2020) (denying motion to dismiss); *Pickles v. Kate Spade and Co.*, No. 15-cv-05329-VC, 2016 WL 3999531 (N.D. Cal. Jul. 26, 2016) (same).

Of the cases that have not fared so well, most failed for the singular reason that the plaintiff could not show damages under the applicable state's law. But in each of those cases (none of which involved Missouri law), the plaintiff was required to prove a "price-value" differential—that is, that they paid more for an item than it was actually worth at the time of purchase. Crucially, that is **not** the law in Missouri, and Kate Spade's citation to cases discussing laws that have such a requirement is grossly misleading in this case.

In Missouri, damages are measured under the benefit-of-the-bargain rule, which is based on the following simple and straightforward equation:

**Damages = Value Represented – Value Received**

Contrary to Defendant's argument, the price paid is not part of this equation and therefore irrelevant to the analysis. Rather, the only thing that matters is whether Plaintiff received products worth the higher value represented on Kate Spade's price tags. Since she did not, she did not obtain the benefit of her bargain and suffered damages.

Kate Spade's argument concerning standing is also a complete misfire. There is no separate "standing" issue for absent class members. The issue Kate Spade raises is actually one of class certification—that is, can Plaintiff represent consumers who purchased different products based on similar misrepresentations? That question is not ripe in the context of a motion to dismiss but, eventually, it should be answered in the affirmative because Plaintiff alleges a common and systematic scheme that applies across *all* of Defendants' Outlet store merchandise. Equally misguided is Kate Spade's attack on the merits of Plaintiff's claim. The evidence Defendants submit should be rejected as outside the pleadings and does not show Kate Spade complied with Missouri law. At best, it raises factual issues that cannot be resolved on the pleadings.

Finally, Plaintiff satisfied Rule 9(b) by alleging the "who, what, when, where and how" of

2

Defendants' fraud. While Defendants fault Plaintiff for not alleging how *she knows about* their false advertising scheme, her allegations must be taken as true and her claim is plausible.

## II.     RELEVANT STANDARDS

The Court must accept as true all factual allegations and view them in the light most favorable to Plaintiff. Fed. R. Civ. P. 12(b)(6); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A Complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555. The allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

"Rule 9(b) requires that the circumstances constituting fraud be pleaded with particularity." *Drobnak v. Anderson Corp.*, 561 F.3d 778, 783 (8th Cir. 2009). It is interpreted "in harmony with the principles of notice pleading" and requires that a complaint allege the "who, what, where, when and how" of an alleged fraud. *Id.* (citation omitted). However, "the special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Abels v. Farmers Commodities Corp.*, 259, F.3d 910, 920 (8th Cir. 2001).

## III.    PLAINTIFF HAS STANDING

Defendants contend Plaintiff lacks "standing" to assert "class allegations" for products she did not purchase and that she may only pursue claims for nine specific items identified in the Complaint. Dkt. 11 at 11-12. This argument fails for two separate reasons.

First, this argument is not actually about "standing." "A plaintiff invoking the jurisdiction of the court must demonstrate standing to sue by showing that she has suffered an injury in fact

that is fairly traceable to the defendant's conduct and that is likely to be redressed by the relief she seeks." *In re SuperValu, Inc. Consumer Data Sec. Breach Litig.*, 870 F.3d 763, 768 (8th Cir. 2017) ("*SuperValu*") (citation omitted). But Defendants do not argue Plaintiff lacks standing to pursue her own claims, and *SuperValu* confirms there is no separate "standing" analysis for class actions versus non-class actions as Kate Spade wrongly contends. *Id.* at 773 (citing William B. Rubenstein, *Newberg on Class Actions* § 2:1 (5th ed. 2012) ("Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court; there is no further, separate 'class action standing' requirement.").

Defendants' argument to the contrary rests primarily on the reasoning of *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 762-63 (W.D. Mo. 2015) (holding plaintiff lacked standing to bring claims for food products not purchased). But *Kelly* was decided before *SuperValu,* when district courts in this Circuit used differing approaches to resolve the class "standing" issue. *Compare Kelly with Gabriele v. ConAgra Foods, Inc.*, 5:14-CV-05183, 2015 WL 3904386, at *10 (W.D. Ark. 2015) ("Because [plaintiff] has satisfied the Article III standing inquiry, his ability to represent putative class members who purchased products he has not purchased is reserved for the class-certification stage of these proceedings."). Following *SuperValu*, courts in this district now follow the approach used in *Gabriel* and reserve consideration of this issue for class certification, where the inquiry turns on whether misrepresentations are similar enough across different products such that a plaintiff can represent persons who bought other products. *See In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, 16-02709-MD-W-GAF, 2019 WL 1418292, at *12 (W.D. Mo. Mar. 21, 2019) (rejecting argument that a "representative Plaintiffs lack standing to assert claims on motor oil they did not purchase" because misrepresentations across different products were similar). The Court should similarly reject Defendants' request to prematurely

4

decide class certification issues here.

Second, Defendants' wrongly suggest that Plaintiff only alleged that she purchased nine products. *See* Dkt. 11 at 11. To the contrary, she expressly pled that she purchased "numerous other products" and seeks damages for "all of her similar transactions with Defendants." Dkt. 1 at ¶¶ 27, 36. While Plaintiff has not located records showing the details of her other purchases, the Court must accept her factual allegations as true and in the light most favorable to her. *Erickson*, 551 U.S. at 94. Moreover, the receipts attached to her Complaint show that Defendants link her purchases to her specific "Customer" account. Dkt. 1-1; 1-2; 1-3; 1-4. Plaintiff anticipates that Defendants can easily search their own customer database to identify her other purchases upon which she has identical claims, and there is no basis to limit her claims at the pleading stage. *McCullen v. Union Pac. R.R. Co.,* 19-00347-CV-W-ODS, 2019 WL 3456815, at *3-4 (W.D. Mo. July 31, 2019) (Courts in Missouri "have repeatedly remarked that motions to dismiss class allegations should be met 'with a great deal of skepticism,' and dismissing class allegations prior to discovery and class certification proceedings is 'rare' and 'generally disfavored.'").

## IV.   PLAINTIFF PLED A VALID CLAIM UNDER THE MMPA

Under the MMPA, Plaintiff must allege she: (1) purchased merchandise from Kate Spade; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of Kate Spade's false and/or deceptive advertising. Kate Spade does not challenge the first two elements, but contends Plaintiff "has not sufficiently alleged the last two elements of her MMPA claim." Dkt. 11 at 15. Kate Spade is wrong.

### A.   Plaintiff alleges an ascertainable loss.

Kate Spade correctly notes "Missouri courts apply the benefit of the bargain rule to determine whether there has been an ascertainable pecuniary loss." Dkt. 11 at 15 (citing *Sunset Pools v. Schaefer*, 869 S.W.3d 883, 886 (Mo. App. Ed. 1994)). But it then tries to mislead the

Court by citing exclusively *non-Missouri* cases for the proposition that a Missouri consumer is "only deprived of the benefit of her bargain if . . . ***the value of what she received is less than the amount she paid.***") Dkt. 11 at 15 (citing cases from New York, 7th Circuit, Ohio, and Massachusetts) (emphasis in original). While that may be true in some jurisdictions, it most definitely is ***not*** true in Missouri.[1]

In Missouri, the benefit-of-the-bargain rule awards "the difference between the actual value of the property and what its value would have been if it had been as represented." *Sunset Pools*, 869 S.W.2d at 886. *See also Hawkins v. Nestle U.S.A., Inc.*, 309 F. Supp. 3d 696, 706 (E.D. Mo. 2018) ("Ascertainable loss involves 'the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction.'"). This is a simple equation with only two elements: (1) ***Value Represented*** and (2) ***Value Received***. The "price paid" by the consumer is **not** part of this equation and irrelevant.

More than 100 years ago, the Missouri Supreme Court explained that the benefit-of-the-bargain rule is intended to fulfill a defrauded party's full expectations, regardless of whether they received something worth the price paid:

> But for the fact that the purchaser thought he was getting a bargain he might not have made the contract at all. If by fraud and deceit he is induced to believe that he is contracting for a benefit or a bargain, and not merely swapping dollars, why should not the benefits of the bargain be an element in the measure of damages in an action for fraud and deceit? Such benefit would be a matter fully contemplated by both parties. By the purchaser, because, as a rule, trades are not made for the purpose of merely exchanging dollars. By the seller, because he would not falsely represent the character of the property save and except to induce the purchaser to believe that he was procuring a benefit of bargain.

---

[1] For an excellent discussion of the different outcomes that can occur under Missouri's benefit-of-the-bargain rule, as opposed to other, more restrictive damages models that consider the amount a consumer pays to purchase an item, Plaintiff respectfully refers the Court to *Craft v. Philip Morris Companies, Inc.*, No. 002-00406A, 2003 WL 23139381, at *6-8 (Cir. Mo. 2003) (explaining that a consumer who pays $200 for a fake item that is actually worth the $200 paid may still recover $300 in benefit-of-the-bargain damages if the genuine item would have been worth $500).

*Kendrick v. Ryus*, 225 Mo. 150, 123 S.W. 937, 940 (1909).

Notably, *Kendrick* has long and consistently been cited as the seminal authority for Missouri's benefit-of-the-bargain rule, yet Kate Spade ignores it completely. The reason for this is obvious. *Kendrick* explicitly rejects as unjust Defendants' false premise that damages are limited to the difference between the price paid and value received. *Kendrick*, 123 S.W. at 940 ("To allow for the plaintiff . . . only the difference between the real value of the property and the price which he was induced to pay for it would be to make any advantage lawfully secured to the innocent purchaser inure to the benefit of the wrongdoer.").

The Missouri Supreme Court made this point even more explicit in *Finke v. Boyer*, 56 S.W.2d 372, 377 (Mo. 1932), which holds that "the measure of damages in an action for fraud and deceit, as in this case, is ***not the difference between the price paid and the actual value of the property received***, but is the difference between the actual value of the property received at the time of its reception and what its value would have been if the representations concerning same had been true." *Finke*, 56 S.W. 2d at 377 (emphasis added). *See also id.* (citing *Kendrick* and holding that damages measured as the difference between price paid and actual value makes "no allowance for benefits in the bargain."); *Taylor v Enterprise Rent-A-Car Co.*, No. CV 10-1849-JST(SHx), 2011 WL 13214090, at *2 (C.D. Cal. June 24, 2011) (citing *Kendrick* and holding that under the MMPA, the "actual price paid is immaterial.").

The benefit-of-the-bargain rule was properly applied in *Bratton v. Hershey Company*, where the plaintiff alleged he "attached importance" to the "size" of candy boxes which led him to believe he was "purchasing more product than was actually received." *Bratton*, No. 2:16-cv-4322-C-NKL, 2017 WL 2126864, at *1 (W.D. Mo. May 16, 2017). Since the value of the product received was less than the value as represented by the size of the boxes, he alleged an ascertainable

loss. *Id.* at \*8 (citing *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 313 (Mo. App. 2016)).

Application of the benefit-of-the-bargain rule here is even more straightforward. Academic literature is replete with studies showing consumers rely on comparative prices to provide information concerning a product's value. Dkt. 1 at ¶6 (citing numerous such studies). *See also Hinojos*, 718 F.3d at 1105-06 ("a product's 'regular' or 'original' price matters;" and a "deceived bargain hunter suffers a more obvious economic injury as a result of false advertising . . . because the bargain hunter's expectations about the product he just purchased is precisely that it has a higher perceived value and therefore has a higher resale value.").[2]

Kate Spade took full advantage of this well-known consumer insight by using misleading and illegal price tags that were *not* based on actual historical sales or offers. For example, on October 24, 2016, Kate Spade told Plaintiff she could purchase two products worth $199.00 for only $63.38 each, or 80% "off" of their normal price. Dkt. 1 at ¶28 and Dkt. 1-1. In reality, those products were not worth $199.00 because, in violation of Missouri law, Kate Spade had not in the recent past offered those same products for a substantial period of time or sold those same products in substantial quantities at the higher reference price. Dkt. 1 at ¶29. Since Plaintiff did not get products worth the higher value represented on Kate Spade's price tags, she did not receive the benefit of her bargain and suffered an ascertainable loss. *Id.*[3]

---

[2] There is nothing "subjective" about a consumer's expectation of value based on a comparison price. "Fair Market Value" is defined as "the price at which a willing seller and a willing buyer will trade, both having a reasonable knowledge of the facts." *Klapmeir v. Telecheck Intern., Inc.*, 482 F.2d 247, 252 (8th Cir. 1973)). By law, a reference price *must* reflect the price at which substantial recent transactions, or substantial recent offers occurred. 15 CSR 60-7.050 and 15 CSR 60-7.060. In other words, the reference price must reflect fair market value (or the seller's belief of fair market value) based on purely *objective* historical data.

[3] Whether Plaintiff "can present evidence to show the amount of her damages is a question of fact to be tested by summary judgment or trial, not by a motion to dismiss." *Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898, 900 (Mo.App.E.D.2003). At trial, Plaintiff, for instance, will use

Ignoring Missouri law completely, Kate Spade argues the only "relevant inquiry is whether the products [Plaintiff] purchased were actually worth less than the ***prices she paid***." Dkt. 11 at 16-17 (citing cases). As discussed, Defendants do not cite a single Missouri case to support this argument which would effectively turn Missouri law on its head. As another court from this District recently observed in a similar false-price comparison case:

> Defendants' argument that . . . plaintiff purchased products for prices she was willing to pay, because she paid them, misses the point. Plaintiff alleges the products she purchased were worth less than defendant's advertising evaluated them. If the actual values of the items were less than as advertised, plaintiff did not receive the benefit of her bargains and she suffered an ascertainable loss.

*Hennessey v. Kohl's Corp.*, No. 4:19 CV 1866 DDN, 2020 WL 870982, at *4 (E.D. Mo. Feb. 21, 2020) (citing cases).

Kate Spade relies on inapposite cases. None discuss Missouri's benefit-of-the-bargain rule, and all require the showing of a price-value differential—a requirement expressly rejected in *Kendrick* and its progeny. For example, in *Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40, 2015 WL 4886080 (D. Mass. 2015), *aff'd*, 865 F.3d 1 (1st Cir. 2017), the Seventh Circuit held that Massachusetts law required the plaintiff to show that she received a product that was "worth less than the selling price." *Id.* at 12. As discussed above, that is not the law in Missouri. In *Mulder v. Kohl's Dep't Stores, Inc.*, 2016 WL 393215, at *8 (D. Mass. Feb. 1, 2016), the court held that there was no cognizable injury under Massachusetts law because the plaintiff "paid $40.78 for items that were, in fact, worth $40.78." In *Belcastro v. Burberry Ltd.*, 2017 WL 744596 (S.D.N.Y. Feb. 23, 2017), the court held that under both New York and Florida law, the plaintiff needed to either plead a "price premium"—that is, that he "overpaid" for the product, or that he did not receive the

---

Kate Spade's actual, historical sales records to demonstrate each item's actual fair market value based on the prices at which those products actually traded hands in the marketplace.

"intrinsic qualities" of the product he was promised. *Id.* at *4 and *6. Likewise, in *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010), the court held that under Illinois law, the plaintiff was required to show the alleged deception caused "her to pay 'more than the actual value of the property'" (citation omitted); and in *Johnson v. Jos. A. Bank Clothiers, Inc.*, 2014 WL 4129576, at *7 (S.D. Ohio Aug. 19, 2014), the court held that, under Ohio law, the plaintiff must show the products purchased were not worth the price paid or that they could have paid less elsewhere. None of these cases discuss (let alone address) Missouri's benefit-of-the-bargain rule, and each imposes the requirement of a price-value differential that has been repeatedly and explicitly rejected by the Missouri Supreme Court. Defendants' out-of-state authority is irrelevant.

**B.    Kate Spade has no "Safe Harbor."**

Kate Spade argues it is entitled to a "safe harbor" and cannot be liable under *any* provision of the MMPA because it "clearly disclosed" when it offered its Outlet products at the higher prices on its price tags. Dkt. 11 at 17-18 (citing 15 CSR 60-7.060(2)(B)). In support, Kate Spade offers the "Russell Decl." (Dkt. 11-1), and heavily redacted excerpts from the Deposition of Ingrid Crain, who was apparently deposed in another case against it in California. (Dkt. 11-2).

"When matters outside the pleadings are presented on a motion to dismiss, the court may either treat the motion as one for summary judgment and provide the parties with an opportunity to provide additional materials, or treat it as one to dismiss and exclude the matters outside the pleadings." *Patterson v. ABS Consulting, Inc.*, No. 4:08CV697RWS, 2009 WL 248683, at *1 (E.D. Mo. Feb. 2, 2009) (citing *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir.1992)). Since Plaintiff has not had the opportunity to engage in any discovery, the Court should simply exclude the materials offered by Kate Spade. It should also reject them because they are not matters embraced by the Complaint and, therefore, not proper subjects for judicial notice. *See* Plaintiff's concurrently filed Objection to Defendants' Request for Judicial Notice.

10

Even if the Court considers these heavily-redacted and incomplete materials, they do not provide a "safe harbor" defense—factually or legally. The regulation Kate Spade cites does not simply require disclosure of the "**first time**" a retailer sold a product at the higher price. It requires a seller to "clearly disclose[]" when a product was sold at the higher comparative price in "*reasonably substantial" quantities*, or when it was offered at the higher price for a "*substantial period of time*" prior to the advertisement. 15 CSR 60-7.060(2)(B)(3)-(4). And there is a rebuttable presumption that these requirements are not met unless the seller can show it either: (1) sold at least ten percent (10%) of total unit sales at the higher price; or (2) offered the product at the higher price for at least forth percent (40%) of the time preceding the advertised discount. *Id.* But the Crain testimony states the "debuted on" date represents only "the *first day* that the product was sold at full price. . . ." Dkt. 11-2 at 8:21-25 (emphasis added). This does nothing to show compliance with the regulation's corresponding "substantial sales" or "substantial" offering period requirements, and there remains a rebuttable presumption that Kate Spade has *not* complied with the law unless it can also show that it met those requirements. Kate Spade has not done so.

Moreover, the "debuted on" language is ambiguous. A disclosure is "clearly" communicated if it is of "a size, color contrast or audibility and is so placed and presented as to be—i) readily noticeable and ii) reasonably understandable." 15 CSR 60-7.010(1)(D). There exists a triable issue whether the "debuted on" language meets these requirements or clearly discloses anything at all. *Calderon*, 2020 WL 1062930, at *7 (whether Defendant's "debuted on" date would "clearly" signal to a reasonable consumer the original date that the former price prevailed is a "question of fact."). It is also unclear *when* the "debuted on" language was used or whether it was used at all on the products Plaintiff purchased. The Crain testimony says "*[w]hen we were using* the debuted on date," (Dkt. 11-2 at 12:13-14), thus suggesting it has not been used continuously

or uniformly. Plaintiff bought products from Kate Spade in October 2016 (Dkt. 1 at ¶¶ 28 and 30), in June, 2017 (*Id.* at ¶32), and in July, 2019 (*Id.* at ¶34), and there is no evidence showing the language was used throughout that entire period, let alone on any of the items she purchased. The Crain testimony also raises a disputed issue by suggesting products sold at Defendants' Outlet stores were "first" sold at "full price" in another "channel." Dkt. 11 at 18. This contradicts Plaintiff's allegation, the truth of which must be accepted, that Outlet store products are manufactured for and sold "exclusively at" Outlet stores. Dkt. 1 at ¶¶2, 22. Finally, the testimony concerning a "mission statement" at cash registers does nothing to show compliance with the MMPA. Dkt. 11-1 at 14:21-24. There is nothing in the Complaint suggesting Plaintiff saw or relied on any such sign, and if it is truly necessary to help clarify Defendants' "debuted on" language, it would only further confirm the price tags are not themselves clear disclosures. Since the evidence Kate Spade relies on does nothing more than create disputed issues of fact it cannot be relied on for dismissal at the pleading stage. *Calderon*, 2020 WL 1062930, at *6-7.

## C.    Plaintiff's claims are pled with particularity

Plaintiff disputes Federal Rule 9(b) applies to her MMPA claims because those claims do not require proof of fraud. *Nestle Purina Petcare Co. v. Blue Buffalo Co., Ltd.*, No. 4:14 CV 859 RWS, 2015 WL 1782661, at *8 (E.D. Mo. Apr. 20, 2015) (because "[p]roof of fraud is not a prerequisite to establishing liability under the Lanham Act . . ., Rule 9(b) does not apply to [a] Lanham Act claim and the claim should not be dismissed for lack of particularity.") (citing *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 314 (8th Cir. 1997)).

If Rule 9(b) does apply, it is satisfied. A complaint satisfies Rule 9(b) if it alleges "the who, what, where, when, and how of the alleged fraud." *Vitello v. Natrol, LLC*, No. 4:18 CV 915 RWS, 2018 WL 6304900, at *2 (E.D. Mo. Dec. 3, 2018 (citing *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)). Where, as here, it is alleged there is a systematic scheme to

defraud, a plaintiff must simply provide "some representative examples of [the defendants'] alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006) ("*Joshi*"). Plaintiff does just that.

Plaintiff alleges Kate Spade engages in a systematic, false price-comparison scheme in which it pretends to offer discounts from higher comparative prices. Dkt. 1 at ¶¶2, 20-26. Consistent with *Joshi*, Plaintiff also details nine representative examples of products she purchased subject to Defendants' scheme. *Id.* at ¶¶27-36. Plaintiff identifies the name of each product, the date and location of each transaction, the false and deceptive higher comparison price, and the allegedly discounted sale price. *Id.* This encompasses the "who" (Kate Spade), the "what" (claims of discounts), the "where" (price tags and signs located within the Kate Spade Outlet Store in Chesterfield Missouri), the "when" (the date(s) of each transaction), and the "how" (by referencing higher comparative prices that are not reflective of the prices at which the same products were actually sold or offered in substantial quantities). *Id.* Rule 9(b) is therefore satisfied. *Vitello*, 2018 WL 6304900, at \*2; *Joshi*, 441 F.3d at 557; *see also Murillo v. Kohl's Corporation*, 197 F. Supp. 3d 1119, 1130 (E.D. Wis. 2016) (allegations that Kohl's engaged in a false price comparison scheme satisfied Rule 9(b) when accompanied with specific details as to which stores plaintiffs visited, dates visited, items purchased, advertised regular or original prices, and store's sale prices).

Defendants do not (and cannot) dispute Plaintiff pled sufficient details of her transactions, but instead argue that her claim fails to rise above "the speculative level" because she does not state *how* she knows that its products are: (1) manufactured for and sold exclusively at the Outlet Stores; (2) inferior to products sold in high-end stores; and (3) not sold in substantial quantities at the higher reference prices. Dkt. 11 at 19-20. The Court should reject this argument.

13

Plaintiff is not required to plead fraud "with complete insight before discovery is complete," *Gunderson v. ADM Investor Servs., Inc.*, 230 F.3d 1363, at *3 (8th Cir. 2000), nor must she allege specific facts concerning matters that are solely known by the defendant. *Abels*, 259 F.3d at 921. For these reasons, similar allegations of wrongdoing have been deemed sufficient to survive a Rule 9(b) and plausibility challenge in other false price-comparison cases, including those brought against Kate Spade. *Calderon*, 2020 WL 1062930, at *4 ("[I]t would "be premature for the Court to dismiss Plaintiffs' claim at this time since '[t]he Rule 9(b) heightened pleading standard is relaxed as to facts supporting allegations of fraud that are exclusively within the defendant's possession and of which a plaintiff cannot be expected to have personal knowledge prior to discovery.'") (quoting *Branca v. Nordstrom, Inc.*, No. 14-cv-2062, 2015 WL 10436858, at *8 (S.D. Cal. Oct. 9, 2015)); *Rubenstein v. Neiman Marcus Group LLC*, No. 15-55890, 687 F. App'x 564, 568 (9th Cir. 2017) (reversing dismissal where the plaintiff alleged that Neiman Marcus Last Call used reference prices to products sold at Neiman Marcus retail stores even though the products were made exclusively for Neiman Marcus Last Call)); *Covell v. Nine W. Holdings, Inc.*, No. 3:17-CV-01371-H-JLB, 2018 WL 558976, at *4 (S.D. Cal. Jan. 25, 2018) ("Moreover, the FAC asserts specific facts that the Court is required to accept in ruling on a motion to dismiss. For example, the FAC alleges that "at no time [was] the Nine West outlet store merchandise ever offered for sale anywhere at the 'SUGG. RETAIL' price."). *Cf. Hennessey*, 2020 WL 870982, at *5 (allowing plaintiff to re-plead the actual value of items purchased, but only after first allowing for "focused discovery that includes purchase orders and sales data").

Plaintiff's claims are also supported by matters subject to judicial notice, such as public filings in which Kate Spade admits its outlet stores sell "*manufactured-for-outlet product*," Plaintiff's Request for Judicial Notice ("RJN") at Exhibit 1, page 5, and a congressional inquiry

into claims that retailers are "selling lower quality items produced specifically for outlet stores without properly informing consumers about the difference between those items and the higher-quality products found in regular retail stores." RJN, Exhibit 2 at pages 1, 2 and 4. According to Congress, "upwards of 85% of the merchandise sold in outlet stores was manufactured exclusively for these stores." *Id*.[4] Based on the totality of circumstances, the Court can draw on its "judicial experience and common sense" to find Plaintiff's claims plausible. *Ashcroft*, 129 S.Ct. at 1950.

## V.    PLAINTIFF ADEQUATELY PLEADS UNJUST ENRICHMENT

Defendants make a conclusory argument that Plaintiff's unjust enrichment claim fails for the same reasons her MMPA claim fails. To the contrary, Plaintiff's unjust enrichment claim survives for the same reasons her MMPA claim survives. *Hawkins*, 309 F. Supp. 3d at 708.

## VI.   CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

Date: September 1, 2020                      BLITZ, BARDGETT & DEUTSCH, L.C.

By: /s/   Christopher O. Bauman
Robert D. Blitz #24387
Christopher O. Bauman #52480
120 South Central Ave., Suite 1500
St. Louis, Missouri 63105
314-863-1500 (office)
314-863-1877 (facsimile)
rblitz@bbdlc.com
cbauman@bbdlc.com

---

[4] A focused Google search also reveals commentators and industry experts support the substance of Plaintiff's claims. *E.g.* https://bigboxoutletstore.ca/blogs/articles/how-to-determine-kate-spade-boutique-vs-factory-outlet-handbags (noting that Kate Spade "outlet bags are made with lower quality materials than the retail boutique bags."); https://exhibitarchives.com/exhibita/outlet-vs-specialty-do-you-know-the-difference (Kate Spade "Outlet stores carry products of similar styles from the specialty and are also manufactured with a lesser quality material.").

Matthew Zevin (admitted pro hac vice)
Stanley Law Group
10021 Willow Creek Road, Suite 200
San Diego, California 92131
619- 235-5306 (office)
815-377-8419 (facsimile)
mzevin@aol.com

Scott A. Kitner (admitted pro hac vice)
Stanley Law Group
6116 N. Central Expressway, Suite 1500
Dallas, Texas 75206
214-443-4301 (office)

*Attorneys for Plaintiff and Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of September, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/   Christopher O. Bauman
*Attorney for Plaintiff and Class*

17