UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JANICE GOLDMAN, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:20 CV 748 RWS |
| TAPESTRY, INC. and KATE SPADE, LLC, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

Janice Goldman ("Goldman") brings this class action suit against Tapestry, Inc. and Kate Spade, LLC, a wholly owned subsidiary of Tapestry, alleging violations of the Missouri Merchandising Practices Act ("MMPA") and unjust enrichment. Tapestry and Kate Spade ("Tapestry") move to dismiss all of Goldman's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). I will grant this motion for the reasons set forth below.

## BACKGROUND

This lawsuit, like many others across the country, attempts to use a state consumer protection statute to challenge an outlet store's pricing and advertising practices. Goldman shopped at Tapestry's Kate Spade Outlet store in Chesterfield,

1

Missouri several times between October 2016 and July 2019, purchasing at least nine items. The purses and accessories that she purchased were heavily discounted; Goldman paid totals ranging from 60% to 70% lower than the listed original price. However, Goldman alleges that the original prices listed on the tags and receipts for the items were not the actual, bona fide prices of these items. Rather, according to Goldman, Tapestry never sold these products at the outlet store at these prices, so any discounts offered were false and misleading. Goldman also alleges that the items sold at the outlet store are "manufactured specifically for, and sold exclusively at" Kate Spade outlet stores and are "materially different from, and inferior to" the items produced for high-end department stores and Kate Spade flagship stores. Compl. at ¶¶ 2, 22.

Goldman contends that she would not have purchased the items that she did if not for Tapestry's allegedly deceptive pricing scheme. She does not allege that she was otherwise damaged by Tapestry.

## LEGAL STANDARDS

### Rule 12(b)(1)

The party invoking subject matter jurisdiction bears the burden of establishing that the case is properly in federal court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations omitted). For diversity cases, this

means satisfying the statutory requirements for diversity of citizenship and amount in controversy under 28 U.S.C. § 1332 in addition to the constitutional requirements for standing. If a plaintiff does not have standing to sue, a court does not have subject matter jurisdiction over the case and must dismiss it. ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters, 645 F.3d 954, 958 (8th Cir. 2011).

### Rule 12(b)(6)

In ruling on a motion to dismiss under Rule 12(b)(6), I must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff.  Hager v. Ark. Dep't. of Health, 735 F.3d 1009, 1013 (8th Cir. 2013).  The federal rules require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, a plaintiff need not provide "detailed factual allegations" but must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The facts alleged must be sufficient to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### Rule 9(b)

A plaintiff alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake" to survive a motion to dismiss. Fed. R. Civ. P. 9(b). The Eastern and Western Districts of Missouri have consistently held

that Rule 9(b) applies to MMPA cases. See Blake v. Career Educ. Corp., 2009 WL 140742, at *2 (E.D. Mo. Jan. 20, 2009) (collecting cases). "Highly specific allegations" are not required under Rule 9(b), especially when the claim relies on facts that are known only to the defendants. Abels v. Farmers Commodities Corp., 259 F.3d 910, 921 (8th Cir. 2001). However, "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Schaller Telephone Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir. 2002) (citation omitted). If a plaintiff alleges that a systematic practice of fraud exists, she "must provide some representative examples of [defendant's] alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors." U.S. ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 557 (8th Cir. 2006).

## **ANALYSIS**

### **I.      Jurisdiction**

#### 1.  Constitutional Standing

Tapestry argues that Goldman only has standing to pursue claims relating to the nine specific items that she identified as purchases in the complaint because she was not personally harmed by the "thousands of Kate Spade products that she did not purchase." [ECF No. 11 at 12]. As a threshold matter, Goldman has alleged that she purchased more than nine items from Tapestry. In her complaint, she

4

explains that while she does not personally have receipts proving that she made other purchases, Tapestry has records of all her transactions and can corroborate her allegation. I must accept this allegation as true.

Tapestry cites two cases from the Western District of Missouri in support of its argument that Goldman only has standing as to the exact items that she purchased. Smith v. Atkins Nutritionals, Inc., 2018 WL 9868591, at *7 (W.D. Mo. May 8, 2018); Kelly v. Cape Cod Potato Chip Co., 81 F.Supp.3d 754, 763 (W.D. Mo. 2015). It does not appear that the Missouri Supreme Court or the Eighth Circuit have addressed this exact issue.

Goldman has not alleged that she was injured by any of the specific items that she purchased. Rather, any injury she suffered was caused by the alleged pricing scheme itself, which Goldman contends is not limited to certain products. It appears to me that the appropriate inquiry for determining if she has standing as to products that she did not personally purchase is "whether there is sufficient similarity between the products purchased and not purchased." Davidson v. Kimberly-Clark Corp., 2014 WL 3919857, at *6 (N.D. Cal. Aug. 8, 2014). I agree with the district courts that have concluded plaintiffs have standing to assert claims on behalf of a class as to products they have not purchased as long as "the products and alleged misrepresentations are substantially similar." Quinn v. Walgreen Co., 958 F.Supp.2d 533, 541 (S.D.N.Y. 2013) (citation omitted). See also Barclay v.

ICON Health & Fitness, Inc., 2020 WL 6083704, at *6 (D. Minn. Oct. 15, 2020)

(collecting cases and concluding that, while some courts "have applied a rigid rule

that a plaintiff lacks standing to assert claims related to products that the plaintiff

herself did not buy," the majority "follow a more a nuanced approach"); In re

Vizio, Inc., Consumer Privacy Litig., 238 F.Supp.3d 1204, 1218 (C.D. Cal. 2017)

(noting that "[c]ourts have taken three broad positions on how related the product

purchased by the named plaintiff and putative class members must be" and

concluding that the "substantially similar" approach, which asks "whether the

plaintiff's averred injury is substantially similar to the claims of those she seeks to

represent," is most consistent with Supreme Court precedent).

Since Goldman has standing to bring suit, I need not engage in a separate

standing analysis to determine whether she adequately represents the interests of

the putative class.  In re SuperValu, Inc., 870 F.3d 763, 768 (8th Cir. 2017). This

inquiry does not occur until the class certification stage. See Barclay, 2020 WL

6083704, at *6 ("Rather than a standing issue, the distinction between product

types may instead create an issue for the typicality of Plaintiffs' claims or the

adequacy of their representation, which is better resolved at class certification.").

2.  Diversity Requirements

In her complaint, Goldman asserts that this Court has subject matter

jurisdiction under the Class Action Fairness Act ("CAFA"), which grants district

courts original diversity jurisdiction in class action suits if certain requirements are satisfied, including: (1) the aggregated matter in controversy exceeds the sum or value of $5,000,000; (2) there is diversity of citizenship between at least one plaintiff and one defendant; and (3) there are at least 100 members in the putative class. 28 U.S.C. § 1332(d); Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013).

Goldman alleges that she is a "resident" of Missouri. Compl. at ¶ 8. She has not adequately established her citizenship because "[w]hen it comes to diversity jurisdiction, the words 'resident' and 'citizen' are not interchangeable." Reece v. Bank of New York Mellon, 760 F.3d 771, 777-78 (8th Cir. 2014). Additionally, Goldman has not established the citizenship of Kate Spade, LLC. An LLC's citizenship is determined by the citizenship of each of its members. E3 Biofuels, LLC v. Biothane, LLC, 781 F.3d 972, 975 (8th Cir. 2015) (citation omitted). Goldman did not identify the members of Kate Spade, LLC in her complaint.

Goldman also alleges, without providing a single factual allegation in support, that the amount in controversy exceeds $5,000,000. Tapestry has not disputed this assertion. However, even if the opposing party does not contest the amount in controversy, a court may question it and require the plaintiff to show "evidence establishing the amount." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014). Goldman defines the putative class—anyone in

7

Missouri who bought any products with an advertised reduced price from any Kate Spade outlet store in the five years before this suit was filed—but she does not explain how damages, in the aggregate, exceed $5,000,000. She does not offer any estimate of how many members comprise the class or the damages that the average class member suffered. Furthermore, Goldman has not even quantified her own loss. In her opposition to Tapestry's motion to dismiss, Goldman notes that the MMPA measures damages as the difference between the value represented and the value received. [ECF No. 20 at 7]. She emphasizes that the statute does not require her to prove that the price she paid for her items exceeded the actual value of those items. However, Goldman simultaneously argues that the discounts she paid were false and misleading because the products sold at the outlets are inferior in quality to those sold at other retailers and are actually worth less than advertised. In raising these arguments, she indicates that she suffered losses because she paid too much for the products she purchased. These are two different theories of loss and it is unclear which Goldman intends to allege.

Because she has not satisfied the CAFA requirements, Goldman has not met her burden to show that this case belongs in federal court, and Rule 12(b)(1) mandates its dismissal.

## II.    MMPA Violations

Even if this Court had subject matter jurisdiction over Goldman's claims, I would dismiss this case under Rule 12(b)(6) for failure to state a claim under the MMPA. A plaintiff alleging a violation of the MMPA must show that she purchased merchandise from the defendant for personal, family, or household purposes and suffered an ascertainable loss as a result of an unlawful practice. Mo. Ann. Stat. § 407.025.1(1). The parties agree that Goldman purchased merchandise from Tapestry for personal, family, or household purposes. They dispute whether Goldman suffered an ascertainable loss as a result of an unlawful practice.

### 1.  Ascertainable Loss

Missouri courts apply the "benefit of the bargain rule" to determine whether a plaintiff has suffered an ascertainable loss under the MMPA. Thompson v. Allergan USA, Inc., 993 F.Supp.2d 1007, 1012 (E.D. Mo. 2014) (citations omitted). Under this rule, the plaintiff can recover "the difference between the value of the product as represented and the actual value of the product as received." Id. The price that the plaintiff actually paid for the product is irrelevant to the analysis. Finke v. Boyer, 56 S.W.2d 372, 377 (Mo. 1932).

Goldman contends that she purchased items that differed from how they were represented—because the items she purchased were actually worth less than the original price listed on the items' tags—and that she therefore did not receive

the benefit of her bargains. In its motion to dismiss, Tapestry claims that Goldman did not suffer an ascertainable loss because she did not purchase any products that were worth less than the amount she paid. In support of this argument, Tapestry cites several cases involving similar factual scenarios, wherein defendants prevailed on motions to dismiss brought by plaintiffs challenging pricing schemes at various outlet stores. However, the consumer protection statutes implicated in those cases required plaintiffs to show a price-value differential in order to recover, which is not a requirement under the MMPA.

Here, Goldman has alleged that she purchased items that were worth less than advertised. Assuming that this is true, then Goldman did not receive the benefit of her bargains under the MMPA. Hennessey v. Kohl's Corp., 2020 WL 870982, at *4 (E.D. Mo. Feb. 21, 2020) (citing Smith v. Tracy, 372 S.W.2d 925, 938 (Mo. 1963); Fong v. Town & Country Estates, Inc., 600 F.2d 179, 182 (8th Cir. 1979)). However, because Rule 9(b)'s heightened pleading standard applies to MMPA claims, Goldman must state her claims with greater particularity to survive this motion to dismiss.

Goldman points to similar price-comparison advertising cases from other courts that have found allegations like hers satisfy the Rule 9(b) standard. However, these decisions are not binding on this Court. Additionally, several other courts have held that allegations like Goldman's do not meet the particularity

requirement of Rule 9(b). See Cruz v. Kate Spade & Co., LLC, 2020 WL 5848095, at *4 (D. Nev. Sept. 30, 2020); Hennessey, 2020 WL 870982, at *5; Fisher v. Eddie Bauer, LLC, 2019 WL 9467922, at *5 (S.D. Cal. Oct. 18, 2019); Dennis v. Ralph Lauren Corp., 2017 WL 3732103, at *5 (S.D. Cal. Aug. 29, 2017). While these decisions are also not binding, I agree with the reasoning of these courts and find that under current Eighth Circuit precedent, Goldman's allegations, without more, do not meet the Rule 9(b) pleading standard for claims sounding in fraud.

The complaint contains conclusory allegations regarding the actual values of the items Goldman purchased. See, e.g., Compl. at ¶ 29 ("In reality, the prevailing retail price and, therefore, the actual fair market value of each item at the time of [Goldman's] purchase was materially lower than the advertised higher regular price."). These types of allegations do not satisfy the Rule 9(b) standard. BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (citation omitted). The allegations appear to be made on the basis of information and belief, which is permitted under Rule 9(b) only when "the facts constituting the fraud are peculiarly within the opposing party's knowledge" or "the allegations are accompanied by a statement of facts on which the belief is founded." Drobnak v. Andersen Corp., 561 F.3d 778, 783-84 (8th Cir. 2009). While Goldman understandably could not obtain some of the specific information underlying her allegations at this stage in litigation, not all of the facts about Tapestry's pricing

practices are "peculiarly within" Tapestry's knowledge. In similar cases, plaintiffs

have successfully alleged more specific facts in support of allegations of fraud.

Goldman even cited one such case in her response brief. Calderon v. Kate Spade &

Co., LLC, 2020 WL 1062930, at *4 (S.D. Cal. Mar. 5, 2020) (finding that plaintiffs

satisfied the Rule 9(b) standard by not only alleging that "the Kate Spade

merchandise sold in the Kate Spade outlet stores is exclusively sold at the Kate

Spade outlet stores and it is not sold anywhere else," but also by conducting an

investigation confirming that "the merchandise purchased by Plaintiffs was priced

with a false reference price and a corresponding discounted price for at least the

90-day period immediately preceding Plaintiffs' purchases"). See also Cruz, 2020

WL 5848095, at *4 (noting that "not all information and sources related to Kate

Spade's reference pricing is held exclusively by Kate Spade. There are ways to

obtain information on the reference prices before filing suit."); Dennis, 2017 WL

3732103, at *2 (explaining the investigation that plaintiff's counsel conducted to

track which stores sold the shirt that plaintiff purchased, and whether the price of

the shirt changed over a period of several months); Taylor v. Nike, Inc., 2017 WL

663056, at *7-8 (D. Or. Feb. 17, 2017) (concluding that one case, Stathakos v.

Columbia Sportswear Co., 2016 WL 1730001 (N.D. Cal. May 2, 2016), which did

not require plaintiffs to conduct a pre-suit investigation, "appears to be an

exception to the general rule regarding sufficient pleadings under Rule 9(b)").

Prior to bringing this suit, Goldman did not conduct any investigation that would have revealed at least some information about Tapestry's pricing practices. Without any facts about the prices of the items she purchased, and if or when the items were ever sold at the original listed prices, as Tapestry contends they were, it is impossible to determine whether Goldman was deprived of the benefit of her bargains. Goldman has therefore not alleged sufficient facts under Rule 9(b) to show that she suffered an ascertainable loss under the MMPA.

## 2. <u>Unlawful Practice</u>

Goldman also has not alleged sufficient facts under Rule 9(b) to show that any loss she may have suffered resulted from an unlawful practice. Unlawful practices covered under the MMPA include "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Ann. Stat. § 407.020.1. I turn to the factual allegations in the complaint to determine whether Goldman has alleged sufficient facts to show that Tapestry engaged in an unlawful practice under the statute.[1]

---

[1] Tapestry argues that its pricing and advertising practices are protected by the "safe harbor" provision of 15 CSR 60-7.060(2)(B). In support of this argument, Tapestry submitted two exhibits—the "Russell Declaration" and the "Ingrid Crain Deposition"—that Goldman objects to as matters outside the pleadings. Because I find that Goldman has not stated a claim under Rule

Goldman has alleged that "the products offered in the Kate Spade Outlet stores are manufactured for, and sold exclusively at, the Kate Spade Outlet stores, and they are *always* sold for a price that is substantially below the higher advertised comparison price." Compl. at ¶ 22. She has further alleged that the made-for-outlet products "are inferior to (based on materials, quality, grade and/or workmanship), and therefore materially different from, the higher quality Kate Spade products offered in Kate Spade flagship and high-end department stores." Compl. at ¶ 22. I must accept these assertions as true. Goldman contends that these claims are supported by information in two exhibits submitted with her opposition brief. [ECF Nos. 22-1 & 22-2]. The first exhibit is Tapestry's SEC filing for fiscal year 2018. The second exhibit is a newspaper article about a potential Congressional investigation into marketing and pricing practices at outlet stores nationwide.

I am permitted to take judicial notice of public records when deciding a motion to dismiss. Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007). This includes SEC filings "where the filings were required by law and [are] not offered to prove the truth of the documents' contents." Kushner v. Beverly Enter., Inc., 317 F.3d 820, 832 (8th Cir. 2003) (citation omitted). Tapestry's SEC filing states that Kate

---

12(b)(6) based on her failure to meet the Rule 9(b) pleading standard, I will not consider these materials or Tapestry's substantive argument.

Spade outlet stores carry "manufactured-for-outlet product and discontinued retail inventory outside the retail channel." [ECF No. 22-1 at 5]. This statement supports Goldman's allegation that Tapestry sells made-for-outlet products in its outlet stores. However, the filing does not indicate that the made-for-outlet products are of inferior quality compared to other Kate Spade products, as Goldman alleges. The filing also notes that the outlet stores carry "discontinued retail inventory" in addition to the made-for-outlet products, which does not support Goldman's allegation that the products sold at the outlet stores are never sold at any other locations at any other prices.

As to the second exhibit, the Federal Rules of Evidence permit me to take judicial notice of facts that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Several courts have concluded that it is appropriate to take judicial notice of a newspaper article under this rule while others have found that it is not. Assuming that judicial notice is proper, the article does not contain facts upon which Goldman's allegations of fraud are founded. The article does not mention or discuss Tapestry and its pricing or marketing practices.

Goldman has not adequately explained "how" the alleged fraud occurred. Joshi, 441 F.3d at 556 (citations omitted) (plaintiff must identify the "who, what,

where, when, and how" of the alleged fraud). She has thus failed to state sufficient facts to support the allegation that Tapestry engaged in an unlawful practice under the MMPA.

### III.    Unjust Enrichment

Unjust enrichment occurs when "a person retains the benefit and enjoys the benefit conferred upon him without paying its reasonable value." Hawkins v. Nestle U.S.A. Inc., 309 F.Supp.3d 696, 708 (E.D. Mo. 2018) (quoting Webcon Group, Inc. v. S.M. Properties, L.P., 1 S.W.3d 538, 542 (Mo. Ct. App. 1999)). A plaintiff bringing a claim of unjust enrichment must show three elements: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." Binkley v. American Equity Mortgage, Inc., 447 S.W.3d 194, 199 (Mo. banc 2014) (quoting Hargis v. JLB Corp., 357 S.W.3d 574, 586 (Mo. banc 2011)).

Goldman's claim of unjust enrichment fails for the same reasons as her MMPA claim. Lacking more facts, it is impossible to determine the "reasonable value" of the products that she purchased and as a result, this Court cannot conclude whether Tapestry was unjustly enriched.

Accordingly,

**IT IS HEREBY ORDERED** that Tapestry, Inc. and Kate Spade, LLC's

Motion to Dismiss [10] is **GRANTED**.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE


Dated this 17th day of November, 2020.